IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEHOLDER PRODUCTIONS, Inc., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 08-261 |
| | : | |
| FRED CATONA, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

June  11 , 2009                                                                                    Anita B. Brody, J.

**I.  Introduction**

On January 16, 2008, Beholder Productions Inc. ("Beholder") filed a complaint against Fred Catona, Gary Catona, Catona Group, Gotham Distributing Corporation ("Gotham"), Ultimate Voice Coach, LLC, and Ron Anderson, collectively "Defendants."  Beholder alleges that Defendants committed copyright infringement in violation of 17 U.S.C. 501(b).  On January 28, 2009, Defendants filed a Motion for Summary Judgment.

**II.  Background[1]**

In early December 2004, Fred Catona met with Emilia Andrews ("Andrews"), one of the two owners of Beholder, to discuss whether or not Beholder would be interested in a producing DVDs, CDs, and ancillary materials of voice lessons entitled "The Ultimate Voice Coach." (Andrews Dep. 34-45 Dec. 14, 2006).  A production company in Florida had been involved in

---

[1] Unless otherwise noted, all facts in this section were taken from Beholder's Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. # 31).  All facts were considered in the light most favorable to Beholder, the non-moving party.

the project but had recently backed out and a shoot was already scheduled for mid-December. Beholder agreed to take part in the project and on December 14, 2004, Beholder and Fred Catona (on behalf of himself and all other defendants) entered into a written contract. Andrews was present during the contract negotiations. In the contract, Defendants agreed to pay Beholder a "Production Budget Estimate Sum" of $25,000.00, a 25% mark-up of the production, a 5% commission of Fred Catona's Royalties, and additional services and out-of-pocket expenses to produce the Ultimate Voice Coach. (Pl.'s Br. in Opp'n. to. Defs'. Mot. for Summ. J. Ex. A.) Defendant Gotham was to handle all of the replication, packaging, distribution, marketing, and advertising for the Ultimate Voice Coach. (Andrews Dep. 30 Jan. 16, 2009.) The contract stated that "[a]ll rights to the final productions are reserved to Beholder Productions, Inc. until all payments have been made." (Pl.'s Br. in Opp'n. Ex. A.) Beholder understood this to mean that they owned the rights to the piece they produced until they were paid in full. (Andrews Dep. 30 Jan. 16).

On February 4, 2005, Fred Catona signed Beholder's Client Approval Form indicating that he had received and approved of two versions of the Ultimate Voice Coach DVD (a QVC version and a standard version) and two versions of the Ultimate Voice Coach Audio CD (a QVC version and a standard version). (Defs.' Mot. for Summ. J. Ex. B.) Beholder's "purpose" in delivering the master copies to Gotham by February 4 was so that the product could go to QVC by February 5, after which QVC had one month to check the product for quality assurance. (Andrews Dep. 40 Jan. 16). Beholder expected that Gotham and Fred Catona would go through the "replication process" to copy and distribute the product within a few months of Fred Catona signing the Client Approval Form. (Id.) Beholder stated that there were "orders immediately" for

the product in February and March. (Andrews Dep. 83 Dec. 14, 2006.)  The QVC version remained unchanged, was accepted by QVC, and aired on that program March 6 through 9, 2005. (Andrews Dep. 41 Jan. 16 ; Andrews Dep. 93 Dec. 14.)  Fred Catona requested several changes to the standard version. (Andrews Dep. 41 Jan. 16.)

In March 2005, Beholder turned over the finished product of the standard version to Fred Catona understanding that Gotham would copy and distribute the product for sale. (Andrews Dep. 41-42 Jan. 16 .) It was always Beholder's intent to give the final product to Gotham to distribute because Beholder is not a distribution house. (Id. 54.)  Beholder gave the final product to Gotham to copy and distribute and did not tell Gotham or Fred Catona not to do so.  (Id. 43.) Beholder sent Fred Catona an invoice on or around March 7, 2005. (Andrews Dep. 83 Dec. 14 .) When questioned, Andrews couldn't remember if Beholder sent any invoices prior to March 7, 2005.  (Id.)

Beholder billed Defendants a total of $97,989.12, but Defendants have refused to pay Beholder anything beyond an initial payment of $25,300.00.  Therefore, Defendants allegedly owe Beholder $72,689.12 plus interest, as provided in the contract.  Additionally, Beholder claims entitlement to 5% of the royalties paid by Gotham to Fred Catona, totaling $3,279.50. Beholder filed a breach of contract action which is currently pending against Defendants in the Court of Common Pleas of Montgomery County.[2]

In July 2007, Beholder received Certificates of Copyright Registration as to the Ultimate

---

[2] On January 2, 2008 I dismissed Beholder's copyright claims for lack of subject matter jurisdiction because Beholder had failed to apply for registration of the subject work (civil action number 06-2863).  I remanded the remaining breach of contract and unjust enrichment claims to state court.

Voice Coach audio recordings, photographs and video recordings.  Beholder alleges that Defendants copied, printed, marketed, sold and distributed the copyrighted Ultimate Voice Coach materials without Beholder's permission.

### III. Standard of Review and Jurisdiction

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  Facts are material if they might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue exists when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.  Id. at 248-52.

Summary judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of his case, as to which he has the burden of proof at trial.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999).  To overcome a summary judgment motion, a plaintiff may not rely on allegations or denials; a plaintiff must set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).

### IV. Discussion

Defendants claim that summary judgment is appropriate because 1) Defendants' copying of the work was not "unauthorized;" 2) Beholder's copyright is invalid; and 3) Beholder's claims are barred by laches and copyright estoppel.  Defendants further contend that Beholder is not entitled to statutory damages or attorneys' fees.  In their Supplement to their Motion for Summary Judgment (Doc. #33), Defendants also argue that Beholder gave them an implied

license to distribute the Ultimate Voice Coach.

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005) (quotations omitted). A copyright owner has the exclusive right to copy, distribute or display his or her work. MacLean Assocs. Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 778 (3d Cir. 1991) (citing 17 U.S.C. § 106). While an exclusive license transferring ownership of a copyright must be in writing, a nonexclusive license may be oral or implied because it does not amount to a "transfer" of ownership. Id. at 778-79 (citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10-37 (1991)). Delivery of the copyrighted work, with the intent that the recipient copy and distribute it, "is one factor that may be relied on in determining that an implied license has been granted." Id. (citing Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 559 n. 6 (9th Cir. 1990). An implied license is an affirmative defense to copyright infringement. Nat'l. Assoc. For Stock Car Auto Racing, Inc. v. Scharle, 184 Fed. Appx. 270, 275 (3d Cir. 2006) (citing Atkins v. Fischer, 331 F.3d 988, 992 (D.C. Cir. 2003); Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 955 (11th Cir. 2009).

In a non-precedential opinion, the Third Circuit referenced a three-factor test adopted by numerous other circuits (including the 9th, the 7th, the 5th and the D.C. Circuits) to determine whether or not an implied license was granted. Stock Car Auto Racing, 184 Fed. Appx. at 275 (citing Atkins, 331 F.3d at 991-92, Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc., 128 F.3d 872, 879 (5th Cir. 1997) and I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)); see also Asset Mktg. Sys., Inc. v. Gagnon, 542 F.3d 748, 754-55 (9th Cir. 2008) (applying the same three-

factor test).  A nonexclusive implied license is granted if "1) a person (the licensee) requests the creation of a work, 2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and 3) the licensor intends that the license-requestor copy and distribute his work."  Asset Mktg. Sys, 542 F.3d at 754-55 (citations omitted).

The facts in Effects Associates are remarkably similar to the case at hand.  In Effects Associates, the defendant Larry Cohen wrote, directed and produced a film.  908 F.2d at 556.  He hired Effects Associates ("Effects") to create special effects footage for some scenes.  Id.  Cohen was unhappy with the special effects in one scene and paid Effects only half of the agreed upon amount for that scene.  Id.  After the film was distributed, Effects sued Cohen for copyright infringement, alleging that Cohen had no right to use the special effects footage unless he paid Effects the full contract price.  Id.  Judge Alex Kosinski held that Cohen had a nonexclusive implied license because Effects had created a work at Cohen's request and delivered it to Cohen intending that Cohen copy and distribute it.  Id. at 558.  "To hold that Effects did not at the same time convey a license to use the footage . . . would mean that [Effects] contribution to the film was 'of minimal value,' a conclusion that can't be squared with the fact that Cohen paid Effects almost $56,000 for this footage."  Id. at 559 (citation omitted).  The court went on to note that "in granting a nonexclusive license to Cohen, Effects has given up only . . . the right to sue Cohen for copyright infringement.  It retains the right to sue him in state court on a variety of other grounds, including breach of contract."  Id. at 559.

Here, Defendants approached Beholder and requested that they produce the Ultimate Voice Coach.  Beholder produced the work and delivered the master copies to Gotham intending that Gotham and Defendants would reproduce and sell the product.  Additionally, Beholder did

not tell Defendants not to sell or distribute the product.  These facts are nearly identical to <u>Effects Associates</u> and clearly fit the three-factor test for granting an implied license delineated by the Third Circuit and many other circuits.  By granting Defendants a nonexclusive implied license to copy and distribute the Ultimate Voice Coach, Beholder waived their right to sue for copyright infringement.  <u>Wilchombe</u>, 555 F.3d at 956.

Beholder distinguishes <u>Effects Associates</u> by citing a footnote in which the court rejects Effects' argument that payment in full was a condition precedent to implying a license because this was not in the contractual language.  908 F.2d at 559.  Beholder points out that in the case at hand, there is a contract provision stating that Beholder maintains the rights to the project until all payments are received.  This is the contract provision that Beholder claims "maintains the status quo by providing that no copyrights will be *transferred* until Beholder is paid in full." (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. 9) (emphasis added).  An implied license, however, does not amount to a transfer of ownership.  <u>Maclean</u>, 952 F.2d at 778 (citing 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.03[A], at 10-37 (1991)).  The contract provision relied on by Beholder may preserve their copyright ownership, but it does not prevent them from granting Defendants an implied nonexclusive license to market and distribute the Ultimate Voice Coach prior to being paid in full.  Implied licenses enable a distributor to market a product while the creator maintains ownership of that product's copyright.  Furthermore, the footnote in <u>Effects Associates</u> that Beholder relies on also points out that Effects' president admitted that he never told Cohen that a failure to pay would be considered copyright infringement.  908 F.2d at 559.  Beholder does not dispute that not only did Andrews not tell Defendants that failure to pay would constitute copyright infringement, but she gave them the

product knowing that they intended to market and distribute it and never told them not to do so. The facts in this case clearly establish that Beholder granted Defendants an implied nonexclusive license to distribute and market the Ultimate Voice Coach.

Of course, an implied license only relieves Defendants of liability for copyright infringement, not their duty to pay Beholder. If Defendants have failed to pay invoices owed under the contract, they have breached the contract - an issue that is already in front of the Montgomery County Court of Common Pleas. Defendants, however, could not have infringed on Beholder's copyright because Beholder gave Defendants an implied license to copy and market the Ultimate Voice Coach. Therefore, Defendants' Motion for Summary Judgment is granted.

          s/Anita B. Brody

          ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:      Copies **MAILED** on _____ to: